HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NATHANIEL CAYLOR, et al., | |
|     Plaintiffs, | CASE NO. C11-1217RAJ |
|     v. | ORDER |
| CITY OF SEATTLE, et al., | |
|     Defendants. | |

Defendants Eugene Schubeck and Don Leslie have appealed a portion of this court's April 30 order denying their motions for summary judgment. They now have each moved to stay this case in its entirety pending the disposition of that appeal. This order does not resolve those motions (Dkt. ## 131, 137); it requires Defendants to submit supplemental briefing.

In relevant part, the April 30 order construed the evidence surrounding an encounter between Plaintiff Nathaniel Caylor and several officers of the Seattle Police Department who surrounded his apartment, including Officers Schubeck and Leslie. That encounter ended when Ofc. Schubeck shot Mr. Caylor in the face as he turned to leave his enclosed patio and reenter his apartment. After construing the evidence in the light most favorable to Mr. Caylor (and his minor son, who is also a Plaintiff), the court concluded that as to Mr. Caylor's 42 U.S.C. § 1983 claim that Ofc. Schubeck used excessive force in violation of the Fourth Amendment, Ofc. Schubeck was not entitled to

ORDER – 1

qualified immunity. The court made the same determination as to Mr. Caylor's Fourth Amendment claim against Ofc. Leslie. Ofc. Leslie did not use force against Mr. Caylor. After Ofc. Schubeck told Ofc. Leslie that he intended to shoot Mr. Caylor, Ofc. Leslie made no effort to prevent Ofc. Schubeck from shooting. Instead he replied, "Don't miss."

In the same order, the court granted summary judgment against Plaintiffs' Fourth Amendment claim based on the officers' demands to enter Mr. Caylor's apartment as well as their § 1983 claims against the City of Seattle. The court declined to enter summary judgment on Plaintiffs' Washington-law claims, which include a claim for outrage and a claim that the City is liable in negligence for actions that led to a state court no-contact order separating Mr. Caylor from his son. The court also declined to enter summary judgment against Mr. Caylor's son's Fourteenth Amendment claim, because no Defendant addressed that claim.

The case was set for trial beginning June 3. Defendants filed their appeals on May 17. On May 20, Ofc. Schubeck and the City of Seattle filed a motion requesting that the court stay this case, including the impending trial, pending resolution of the appeals. The next day, Plaintiffs filed their response to the motion, then Ofc. Leslie filed his own motion for stay, and then Plaintiffs filed their response to Mr. Leslie's motion.

From these submissions, the court extracts one point of apparent agreement. The parties concur that if the court stays trial of the federal claims that are the subject of the appeals, it should not separately try any of the other claims.

If the court stays trial, Plaintiffs request that the court enable them to simultaneously appeal the court's summary judgment dismissal of their 42 U.S.C. § 1983 claims against the City of Seattle. Plaintiffs ask the court to certify that ruling, via Federal Rule of Civil Procedure 54(b), as a partial final judgment.

ORDER – 2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

The sole argument Plaintiffs raise as to the propriety of a stay is that the court should "find that the defendants' claim of qualified immunity is frivolous or has been waived," certify that they have "forfeited their right to pretrial appeal," then "proceed with trial." *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992); *see also Behrens v. Pelletier*, 516 U.S. 299, 310-11 (1996) (approving, in dicta, procedures permitting district courts to certify qualified immunity appeals as frivolous). As to waiver, Plaintiffs' sole argument is that Defendants' gave up their right to appeal a qualified immunity denial by delaying their summary judgment motions and then delaying their appeals until 17 days after the court's order resolving those motions. These arguments are wholly unpersuasive. Defendants timely filed their motions for summary judgment. Plaintiffs point to no authority requiring them to do more in order to preserve an interlocutory appeal. Plaintiffs similarly point to no authority requiring Defendants to appeal any sooner than they did. Defendants did not waive any appellate right. The court finds, however, that Plaintiffs have raised colorable questions as to whether Defendants' interlocutory appeal is frivolous.

16
17
18
19
20
21
22
23
24
25
26

An order denying qualified immunity is, "*to the extent it turns on an 'issue of law,'* immediately appealable." *Behrens*, 516 U.S. at 311 (emphasis added, quoting *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985)). That qualification is important. Many orders denying qualified immunity turn in part on issues of law and in part on the court's determination of the facts underlying those issues. This case is a good example. The court sifted through reams of evidence that raised countless factual disputes. Because the court considered that evidence on summary judgment, it was required to construe it in the light most favorable to Mr. Caylor. That process was more complicated in this case than usual, because the parties also raised disputes about whether the court could judicially estop Mr. Caylor from relying on evidence contrary to statements he made during various state court proceedings arising out of the shooting.

27
28

ORDER – 3

After compiling an account of the relevant facts, the court concluded that neither Ofc. Schubeck nor Ofc. Leslie was entitled to qualified immunity. The court need not repeat its qualified immunity analysis from the April 30 order. To summarize, the court found that a jury could conclude from the relevant facts that no reasonable officer in Ofc. Schubeck's position would have believed the shooting complied with the Fourth Amendment. As to Ofc. Leslie, the court found that a jury could conclude from the relevant facts that no reasonable officer would have failed to, at a minimum, dissuade Ofc. Schubeck from shooting. The court found that clearly established law would have apprised a reasonable officer in Ofc. Schubeck's position that his decision to shoot was unconstitutional, and that clearly established law would have apprised a reasonable officer in Ofc. Leslie's position that his choice to do nothing to prevent the shooting was unconstitutional.

The officers' motions to stay leave much doubt as to whether they seek to appeal the court's legal determinations or the court's development of the facts. To be sure, the officers make reference to some of the court's decisions on legal issues. But their motions are also strewn with references to their preferred version of the facts. For example, Ofc. Schubeck's motion asserts that he "knew that upon Caylor's reentry to the apartment any chance to intervene to protect the child would be lost." Mot. at 4. That assertion conflicts with the court's construction of the evidence. As the April 30 order explains, Ofc. Schubeck had observed Mr. Caylor and his son on the balcony, and had observed that the boy was in no distress. He then watched Mr. Caylor and his son reenter the apartment. Mr. Caylor later reappeared, having neither harmed his son nor threatened to do so. So while it is perhaps accurate to say that Ofc. Schubeck *believed* that he would lose the chance to protect Mr. Caylor's son once Mr. Caylor reentered his apartment a second time, the principal reason for the court's denial of qualified immunity was the *factual* determination that a jury could conclude that no reasonable officer in Ofc.

ORDER – 4

1 Schubeck's position would have believed the boy was in danger. Ofc. Leslie similarly imposes his own view of the facts. He contends that "it cannot be said . . . that every reasonable officer in [his] shoes would have known that Officer Schubeck was going to use deadly force." Mot. at 3. To the contrary, the court concluded that the evidence required it to assume as a matter of fact that Ofc. Schubeck told Ofc. Leslie he was going to use deadly force, and that every reasonable officer would have believed him.

The Supreme Court has given some guidance that delineates the permissible scope of an interlocutory appeal. In *Johnson v. Jones*, 515 U.S. 304, 308 (1995), the Court reviewed an appellate court's determination that it lacked jurisdiction to consider an interlocutory appeal from a qualified immunity denial based in part on factual disputes. The Court reviewed the reasoning underlying the doctrine permitting appeals of legal issues underlying qualified immunity denials. *Id.* at 309-12. It then concluded that an order denying qualified immunity is not appealable if it determines only "which facts a party may, or may not, be able to prove at trial." *Id.* at 313. It observed that when a defendant "simply wants to appeal a district court's determination that the evidence is sufficient to permit a particular finding of fact after trial," it is difficult to find a standalone legal question. *Id.* at 315. It acknowledged that the "existence, or nonexistence, of a triable issue of fact" is an issue on which appellate courts "enjoy no comparative expertise" over district courts. *Id.* at 316. In the Court's view, questions about factual determinations typically require "reading a vast pretrial record, with numerous conflicting affidavits, depositions, and other discovery materials." *Id.* That sort of review, the Court explained, not only creates undue delay, it raises the specter that the appellate court will have to address the same factual issues again after trial. *Id.* In light of all of those considerations, the Court explained that it was "persuaded that immunity appeals interfere less with the final judgment rule if they are limited to cases presenting neat abstract issues of law." *Id.* at 317 (internal quotations and alterations

ORDER – 5

omitted). More recently, the Court has reaffirmed *Johnson*, explaining that "immediate appeal . . . is available when the appeal presents a 'purely legal issue,' illustratively, the determination of 'what law was clearly established' at the time the defendant acted," but not available "when the district court determines that factual issues genuinely in dispute preclude summary adjudication." *Ortiz v. Jordan*, 131 S. Ct. 884, 891 (2011) (quoting *Johnson*, 515 U.S. at 313).

The motions before the court raise concerns that the Defendants intend to pursue their appeal on a frivolous basis – that this court should have construed the evidence differently. That argument would not necessarily be frivolous if Defendants were pursuing it on appeal from a final judgment, but it is frivolous in an interlocutory appeal of a denial of qualified immunity. Whereas the Defendants offer a host of characterizations of the facts, they scarcely touch on the court's legal determinations. Ofc. Leslie cites no authority construing the Fourth Amendment. Ofc. Schubeck cites Fourth Amendment authority, but makes little effort to explain how that authority bears on the court's decision that *given its construction of the facts*, his decision to shoot was unconstitutional as a matter of clearly established law.[1] Defendants need not provide the court with their proposed appellate briefs, of course, but they must do more to assure the court that they have a non-frivolous basis for interlocutory appeal. Plaintiffs assert that the "Defendants have never seriously argued that Officer Schubeck's decision to shoot would be justified if the plaintiff's evidence is believed." Opp'n at 3. The court largely concurs in that assessment.

In light of these concerns, the court will require supplemental briefing. As to the principal question – whether Defendants are pursuing an appeal of the court's factual determinations – Defendants may alleviate the court's concerns by squarely addressing

---

[1] The only authority to which Ofc. Schubeck devotes substantial analysis is a decision that one of this District's judges made last month granting qualified immunity on summary judgment. That decision does not bear on clearly established law, because it is neither appellate authority nor authority that existed when Ofc. Schubeck shot Mr. Caylor in May 2009.

ORDER – 6

the court's factual determinations. In summary, the court concluded that a reasonable officer in Ofc. Schubeck's position would have known the following facts:

1) Mr. Caylor had threatened suicide before officers arrived on the scene, but not after.
2) Mr. Caylor refused officers' requests for permission to enter his apartment.
3) At no point did Mr. Caylor threaten to harm his son. He indicated that if officers forced entry to his apartment, they would hurt his son, who was near the front door. Ofc. Schubeck knew that, at a minimum, Mr. Caylor's son was nowhere near the front door when he appeared on the balcony with his father.
4) Mr. Caylor's son exhibited no signs of distress when Ofc. Schubeck observed him on the balcony. Officers heard no indications of distress from the boy while he and Mr. Caylor were inside the apartment.
5) At a point prior to Ofc. Schubeck's first visual contact with Mr. Caylor, officers heard a sound consistent with the "racking" or "cycling" of a shotgun.
6) Mr. Caylor admitted that he had a shotgun in his apartment, but did not specify where it was or whether he had so much as touched it.
7) Mr. Caylor did not display a weapon or threaten to use a weapon.
8) Mr. Caylor used profanity and expressed anger at the officers. He was highly agitated throughout the encounter.
9) Mr. Caylor threatened to fight officers if they entered his apartment.
10) Mr. Caylor did not suggest he was attempting to commit "suicide by cop." Instead, he asked Ofc. Schubeck if he was going to shoot him and justify the shooting as a "suicide by cop."
11) Before Mr. Caylor reappeared on his balcony, Ofc. Schubeck told Ofc. Leslie that if Mr. Caylor reappeared, he would shoot him rather than let him reenter his apartment.

ORDER – 7

12) With the exception of Ofc. Schubeck's observation of Mr. Caylor and his son on the balcony, Ofc. Leslie was aware of the same relevant facts as Ofc. Schubeck.

13) Ofc. Leslie did not discuss Ofc. Schubeck's premeditated decision to shoot. Instead he said, "Don't miss."

14) Neither Ofc. Leslie nor Ofc. Schubeck warned Mr. Caylor that Ofc. Schubeck was going to shoot.

15) Ofc. Schubeck shot with the intent to kill or seriously injure Mr. Caylor.

As the court has repeatedly emphasized, a jury might make different determinations as to many of these facts, but the summary judgment standard required the court to base its decision on these factual determinations.

No later than 11:00 a.m. on Thursday, May 23, Defendants shall submit a supplemental brief. Defendants' briefs shall answer the following questions:

1) Do Ofc. Schubeck and Ofc. Leslie certify that they will not, in their interlocutory appeal, contest the factual determinations identified above?

2) If the answer to the previous question is "no," why should the court not certify that their interlocutory appeal is frivolous because it impermissibly challenges factual determinations as opposed to legal decisions?

3) What "purely legal issue" or issues do Defendants intend to raise on appeal?

4) Does any Defendant object to the Plaintiffs' request to issue a Rule 54(b) certification as to the court's summary judgment dismissal of Plaintiffs' § 1983 claims against the City? If so, why?

Dated this 22nd day of May, 2013.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 8